NOTICE

Decision filed 10/17/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200019-U

NO. 5-20-0019

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 18-CF-441 |
| | ) | |
| KENNETH W. DEROSSETT, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the circuit court did not abuse its discretion in denying the defendant leave to withdraw his plea of guilty to aggravated domestic battery by strangulation, and defense counsel in the court below strictly complied with Supreme Court Rule 604(d), and any argument to the contrary, on either point, would lack merit, the defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    The defendant, Kenneth W. Derossett, appeals from a judgment of conviction entered by the circuit court of Jackson County, after the defendant pleaded guilty to aggravated domestic battery by strangulation. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. Accordingly, it has filed with this court a motion to withdraw as counsel, as well as a supporting brief. See *Anders v. California*, 386 U.S. 738 (1967). Proper notice was given to the defendant. This court

1

gave him ample opportunity to file a written response to OSAD's motion, or a brief, memorandum, etc., explaining why his appeal has merit, but he has not taken advantage of that opportunity. After examining OSAD's *Anders* motion and brief, along with the entire record on appeal, this court concludes that this appeal has no merit. Accordingly, OSAD's motion for leave to withdraw as counsel is granted, and the judgment of conviction entered by the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4     On October 29, 2018, the state's attorney of Jackson County filed a two-count information charging the defendant with (1) aggravated domestic battery by strangulation (720 ILCS 5/12-3.3(a-5) (West 2018)), a Class 2 felony, and (2) domestic battery. It was alleged that on September 16, 2018, the defendant strangled Angela Derossett.

¶ 5     Five days after the alleged strangulation—that is, on September 21, 2018—Angela Derossett, the defendant's ex-wife, sought protection under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2018)) in case No. 2018-OP-122. That same day, the circuit court entered an emergency order of protection that was in effect until October 9, 2018. See *id.* § 217. On October 9, 2018, Angela Derossett sought a plenary order of protection. See *id.* § 219. In her petition for that plenary order, she indicated, through check boxes, that she was seeking the order in an "independent" proceeding, and not in a "criminal," "juvenile," or "other civil proceeding." The circuit court granted the plenary order that same day, October 9, 2018. The order specified that it was effective until October 9, 2020. See *id.* § 220(b)(0.05). The order did not specify that it was entered in conjunction with a civil proceeding or a criminal proceeding, even though it had check boxes for that purpose. Both the emergency and the plenary order listed Angela Derossett, along with her and the defendant's minor daughter, Olivia, as protected persons,

2

and they ordered the defendant to have no contact with either of them, and to stay 1000 feet from their Grand Tower, Illinois, residence.

¶ 6    On October 1, 2018, the defendant was arrested at Angela Derossett's residence in Grand Tower, Illinois. He was charged with two counts of violation of an order of protection (counts 1 and 2) plus one count of a misdemeanor weapons offense (count 3) in Jackson County case No. 18-CF-397. Case No. 18-CF-397 is the subject of the appeal in appellate court No. 5-20-0018.

¶ 7    On February 25, 2019, the defendant, his public defender, and an assistant state's attorney appeared before the circuit court. The public defender announced that the parties had reached an agreed disposition in both the instant case and in case No. 18-CF-397. In the instant case, the public defender explained, the defendant would plead guilty to aggravated domestic battery by strangulation, and the State would recommend a prison sentence of no more than five years, while the other charge in the instant case would be dismissed. As for case No. 18-CF-397, the public defender stated that the defendant would plead guilty to violation of an order of protection, as charged in count 1, and the State would recommend a prison sentence of no more than two years, while the two other counts in that case would be dismissed.

¶ 8    In the instant case, the circuit court admonished the defendant as to the nature of the charge of aggravated domestic battery by strangulation and the possible penalties, including imprisonment for a term of three to seven years, to be followed by mandatory supervised release (MSR) for four years, and the defendant indicated his understanding. The court admonished the defendant in regard to case No. 18-CF-397, as well, and the defendant indicated his understanding. The court went on to admonish the defendant about the presumption of innocence, his right to a trial, whether by a jury or by the judge, the State's burden of proving guilt beyond a reasonable doubt, his right to confront and to cross-examine the State's witnesses, his right to present evidence and defense

3

witnesses, and his right to remain silent, and the defendant indicated his understanding. The defendant also indicated his understanding that by pleading guilty, he would be waiving all of his aforementioned rights.

¶ 9    The defendant acknowledged reading, understanding, and signing a written plea of guilty in the instant case. (The written plea of guilty, solely to aggravated domestic battery by strangulation, is a part of the record on appeal.) He indicated that nobody had coerced or threatened him into pleading guilty, that he was not under the influence of any substance that might affect his understanding, and that he did not have any questions about what was happening. The assistant state's attorney supplied a factual basis for the plea in the instant case, which included mention of the defendant's prior conviction for violation of an order of protection in a 2017 misdemeanor case, and the court determined that the factual basis was sufficient. The court found that the defendant's plea of guilty was knowing and voluntary, and that the defendant understood everything that happened at the court proceeding. The court accepted the defendant's plea of guilty to aggravated domestic battery by strangulation in the instant case, dismissed the accompanying domestic-battery count, and ordered the preparation of a presentence investigation report (PSI). Similar procedures were followed for the acceptance of the guilty plea to violation of an order of protection in case No. 18-CF-397.

¶ 10    Both the court and defense counsel repeatedly referred to the defendant's guilty pleas as "open" pleas; however, since the State agreed to cap the lengths of the prison sentences below the legal maxima, the pleas were, in fact, negotiated. *People v. Linder*, 186 Ill. 2d 67, 74 (1999). Subsequent to the plea hearing, but well before the sentencing hearing, the public defender withdrew from the case. Attorney Christian J. Baril substituted as postplea counsel for the defendant.

4

¶ 11 On July 11, 2019, the defendant's cases—the instant case and case No. 18-CF-397—proceeded to sentencing. The State called only one witness, a crime victims' advocate who read into the record two victim impact statements. In the first of those two statements, the defendant's 10-year-old daughter, Olivia, wrote that her father "lied to [her], stole from [her], and beat up [her] mom for no reason" and that she "see[s] a counselor" because of her father's actions. In the second victim impact statement, Angela Derossett, the defendant's ex-wife, wrote that for the past five years, the defendant had put her and daughter Olivia "through hell" by doing such things as repeatedly breaking into their house and stealing from them, and repeatedly choking Angela, at least once to the point of unconsciousness, tackling her to the floor, "bodyslamm[ing]" her, which caused her to break a rib, drugging her, etc.

¶ 12 For its part during the sentencing hearing, the defense presented a letter from a Jackson County jail official, which described the defendant as a model inmate. The defense then called Rodney Snyder, Lori Norton, Natalie Gee, and the defendant himself to testify at the sentencing hearing.

¶ 13 Snyder, age 52, testified that he had been friends with the defendant for 35 years, and had always found him trustworthy and reliable. According to Snyder, the defendant loved and provided for his daughter.

¶ 14 Norton testified that she had been friends with the defendant for 40 years, and grew up with him. The defendant had "kind of mentored" Norton's son, who was autistic, teaching him "life skills" such as woodworking on several occasions, which gave her son greater confidence. Norton knew Angela Derossett, and on September 17, 2018, she waved at Angela from her front porch as Angela walked by, and Angela did not appear to be injured or distraught. Angela went into her parents' house, which was three doors down from Norton's house. Thirty minutes later, an

5

ambulance arrived at the parents' house, and Angela appeared outside, screaming, with blood on her face.

¶ 15    Gee testified that she was the defendant's girlfriend. She met the defendant in 2014, when they worked together at Choate Mental Health Center. He was "a very hard worker" who helped to feed and shower the patients in his unit. Gee was familiar with Angela Derossett, and had "caught" Angela trying to break into her garage. In 2018, on two occasions, Gee phoned the police to report that Angela was knocking on doors and windows at her home.

¶ 16    The defendant testified only that he was released from federal prison on April 20, 2007. (The PSI shows that the defendant was convicted of conspiracy to manufacture methamphetamine in the United States District Court for the Southern District of Illinois.) The State did not cross-examine him. It did not call rebuttal witnesses.

¶ 17    In its argument, the State recommended five years of imprisonment for aggravated domestic battery by strangulation in the instant case, as well as two years of imprisonment for violation of an order of protection in No. 18-CF-397, and it also recommended that the sentences be served consecutively. According to the State, the order of protection would be "extended two years" beyond the end of the MSR term. (This comment by the State appears to have influenced the defendant's testimony, five months later, at the hearing on the defendant's motion to withdraw guilty plea that he would file nearly one month after this sentencing. See *infra*.) Defense counsel recommended a sentence of probation in both cases. In his statement in allocution, the defendant said that he pleaded guilty solely to keep his daughter from being "drug into this." Although he never read the order of protection, he stated that he would "stay away from her" but "it goes both ways."

6

¶ 18    The court sentenced the defendant, in the instant case, to four years in prison for aggravated domestic battery by strangulation (*i.e.*, one year fewer than the agreed maximum of five years), concurrent with one year in prison for violation of an order of protection in case No. 18-CF-397 (*i.e.*, one year fewer than the agreed maximum of two years in prison), to be followed by MSR for four years. After imposing these sentences, the court admonished the defendant about his appeal rights.

¶ 19    On August 9, 2019, the defendant, by postplea counsel Baril, filed a motion to withdraw guilty plea and a motion to reconsider sentence, both in the instant case and in case No. 18-CF-397. In the motion to withdraw guilty plea in the instant case, it was alleged that (1) the plea was unknowing and involuntary because the defendant had not been informed, either by his attorney or by the circuit court, that the order of protection regarding his 10-year-old daughter "would be stayed during his sentence and would resume after he was released"; and (2) there was "doubt as to [the defendant's] guilt," for the defendant "maintains his innocence" and pleaded guilty "only in an effort to keep his daughter *** from the pain of being called as a witness for the State." In the motion to reconsider sentence in the instant case, it was alleged that (1) the four-year sentence of imprisonment was excessive and (2) the court failed to give proper consideration to the statutory factors in mitigation for which the defendant presented evidence at his sentencing hearing. Later, the defendant, by counsel, filed in the instant case an amended motion to reconsider sentence. It retained the two allegations presented in the original motion to reconsider sentence, but added a third allegation—that the circuit court had improperly considered whether the defendant's conduct caused or threatened serious harm to an individual, where that factor was inherent in the offense of aggravated domestic battery by strangulation.

¶ 20    On October 22, 2019, counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) in each of the two cases. The contents of that certificate are detailed in the analysis section of this order, *infra*.

¶ 21    On December 11, 2019, the court held a hearing on the motion to withdraw guilty plea and the motion to reconsider sentence, in both the instant case and in case No. 18-CF-397. First, the court heard evidence relating to the withdrawal of the pleas. The defendant was the only witness called at that hearing. He testified that "the whole reason [he] took the plea [offer]" was to keep his 10-year-old daughter, Olivia, "out of the whole case," and he definitely would not have taken the plea offer if he had known that the State would make Olivia a part of the sentencing hearing. Also, the defendant did not know that his daughter was a protected person under the order of protection, along with his ex-wife, for he had not read the order. Nobody had informed him, prior to the sentencing hearing, that the order of protection would automatically remain in effect until two years after his MSR term was completed, which would result in his being forbidden from making contact with his daughter until she was 20 years old, an outcome that the defendant found unacceptable and repugnant. He never would have taken the plea offer, he maintained, if he had known about the automatic extension of the order of protection. The defendant also explained that he had a strong defense to the charge in the instant case, aggravated domestic battery by strangulation. According to the defendant, Lori Norton could testify that she saw Angela Derossett "after this so-called altercation took place," and Angela appeared "absolutely fine" as she smiled and waved to Lori and walked into Angela's mother's house. After hearing the arguments of counsel, the court denied the motions to withdraw guilty pleas.

¶ 22    The court proceeded to the motions to reconsider sentences. No witnesses were called, but the parties presented arguments. Defense counsel argued that the four-year prison sentence was

excessive in light of the evidence in mitigation that the defendant presented at the sentencing hearing. In addition, defense counsel argued that the circuit court had improperly considered whether the defendant's conduct had caused or threatened serious physical harm, even though that factor was an inherent part of aggravated domestic battery by strangulation.

¶ 23 After hearing the parties' arguments, the court denied the motions to reconsider sentences. The court then admonished the defendant as to his appeal rights.

¶ 24 On January 9, 2020, the defendant filed a notice of appeal, thus perfecting the instant appeal. The circuit court appointed OSAD as his appellate attorney.

¶ 25                                  ANALYSIS

¶ 26 This appeal is from a judgment of conviction, which was entered after a (partially) negotiated plea of guilty to aggravated domestic battery by strangulation. It follows the circuit court's denial, on the merits, of the defendant's motion to withdraw the guilty plea and his motion to reconsider sentence. As previously mentioned, the defendant's appointed appellate attorney, OSAD, has filed with this court an *Anders* motion to withdraw as counsel due to a lack of substantial merit, and the defendant has not responded. This court agrees with OSAD that this appeal lacks merit.

¶ 27 "A defendant does not have an automatic right to withdraw a plea of guilty." *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). Instead, a defendant must show "a manifest injustice under the facts involved." *Id.* "Withdrawal is appropriate [1] where the plea was entered through a misapprehension of the facts or of the law or [2] where there is doubt as to the guilt of the accused and justice would be better served through a trial." *People v. Hughes*, 2012 IL 112817, ¶ 32. "A defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence." *People v. Cunningham*, 286 Ill. App. 3d 346,

9

350 (1997). Where the circuit court reaches the merits of a motion to withdraw guilty plea, the decision to grant or deny that motion "rests in the sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion." *Hughes*, 2012 IL 112817, ¶ 32. An abuse of discretion will be found only "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Delvillar*, 235 Ill. 2d at 519.

¶ 28 Here, the defendant attempted to show a manifest injustice by claiming both a misapprehension of the facts or of the law, and a doubt as to his guilt. The defendant described his misapprehension during his December 11, 2019, testimony at the hearing on his motion to withdraw guilty plea. He stated that if he had known that his 10-year-old daughter was listed as a protected person under the order of protection, and that the order would automatically remain in effect until two years after his MSR term was completed, resulting in his being forbidden from having any contact with his daughter until she was 20 years old, he definitely would not have pleaded guilty, in either of his two cases.

¶ 29 In general, a plenary order of protection is valid for a fixed period of time, not to exceed two years. See 750 ILCS 60/220(b)(0.05) (West 2018). Different temporal rules apply where a plenary order of protection is entered "in conjunction with another civil proceeding" (*id.* § 220(b)(1)) or "in conjunction with a criminal prosecution or delinquency petition" (*id.* § 220(b)(2)). For example, where the plenary order is entered in conjunction with a criminal prosecution, the order remains in effect until two years after the expiration of any sentence of imprisonment and the subsequent MSR. See 725 ILCS 5/112A-20(b)(4) (West 2018), which is referenced in 750 ILCS 60/220(b)(2) (West 2018). This is the subsection that the defendant apparently had in mind during his December 11, 2019, testimony at the hearing on the motion to withdraw guilty pleas; it is the subsection that the defendant apparently thought applied to him.

10

However, there is no indication that the plenary order of protection entered in this case was entered "in conjunction with a criminal prosecution," or in conjunction with anything else. Neither Angela Derossett, who petitioned for the order, nor the circuit court, which entered the order, ever indicated—through check boxes on the petition or order, or in any other manner—that it was so entered. The order of protection was entered in an independent action; it was not entered "in conjunction with" any other action. The defendant's sole "misapprehension" occurred at the time he sought to withdraw his plea, and not at the time he entered his plea.

¶ 30    The defendant also stated his reasons for why there was doubt as to his guilt. He cited his friend of 40 years, Lori Norton, who testified at his July 11, 2019, sentencing hearing that she had seen Angela Derossett on September 17, 2018, and that Angela had seemed perfectly normal, but that approximately 30 minutes afterward, Angela emerged from her parents' house with a bloody face. Norton's testimony may have been useful to the defendant at a trial for aggravated domestic battery by strangulation, but such testimony would hardly be sufficient to justify the withdrawal of the defendant's guilty plea to that charge. After all, the court thoroughly admonished the defendant in accordance with Illinois Supreme Court Rule 402 (eff. July 1, 2012), the rule adopted to ensure compliance with due process at guilty-plea hearings (see *People v. Fuller*, 205 Ill. 2d 308, 322 (2002)), and it found that his plea was knowing and voluntary. The transcript of the February 25, 2019, guilty-plea hearing, summarized *supra*, shows that there was no error in denying the defendant's motion to withdraw guilty plea.

¶ 31    Also, there was no error in the circuit court's denial of the defendant's motion to reconsider the sentence imposed in the instant case. The defendant, by agreeing to plead guilty to aggravated domestic battery by strangulation in exchange for the State's recommending a sentencing cap of five years in prison, "in effect, agree[d] not to challenge any sentence imposed below that cap on

11

the grounds that it is excessive." *Linder*, 186 Ill. 2d at 74. In other words, the defendant agreed not to challenge, as excessive, the four-year prison sentence that was imposed. The circuit court should not even have considered the motion to reconsider the sentence as excessive. See also Ill. S. Ct. R. 604(d) (eff. July 1, 2017) ("No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentences to be imposed and not merely to the charge or charges then pending.").

¶ 32 Furthermore, there is no clear indication that the circuit court considered, as a factor in aggravation, a fact inherent in the charge of aggravated domestic battery by strangulation. The defendant alleged that the circuit court had improperly considered whether the defendant's conduct caused or threatened serious harm to an individual, where that factor was inherent in aggravated domestic battery by strangulation. Prior to imposing sentence on the defendant, the court stated that it had "considered" the State's and defense counsel's arguments, for or against, its considering that factor in determining the sentence. However, the court did not explicitly say that it had decided that the factor could, or could not, be used as a factor in aggravation, and in giving its reasons for the sentence, the court did not mention that factor. This court must presume that a sentencing court considered only appropriate factors, absent an affirmative showing from the record to the contrary. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 33 Weeks after postplea counsel Baril, on the defendant's behalf, filed the motion to withdraw guilty plea and the motion to reconsider sentence in the instant case, but prior to the circuit court's hearing on those motions, Baril filed a certificate of compliance with Illinois Supreme Court Rule

12

604(d) (eff. July 1, 2017). Baril certified that (1) he had "consulted with the [d]efendant in person, by mail, by phone or by electronic means to ascertain [his] contentions of error in the entry of the plea and in the sentence"; (2) he had "examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing"; and (3) he had "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." This certificate closely tracks the language of Rule 604(d), and it shows the necessary strict compliance with the rule, as this court's *de novo* review makes abundantly clear. See *People v. Easton*, 2018 IL 122187, ¶ 25 (counsel's compliance with Rule 604(d) is reviewed *de novo*).

¶ 34                                    CONCLUSION

¶ 35    The circuit court did not err in denying the defendant's motion to withdraw guilty plea or in denying his motion to reconsider sentence, and postplea counsel strictly complied with Rule 604(d). Any argument to the contrary, on either point, would lack merit. Therefore, OSAD's motion for leave to withdraw as the defendant's appointed appellate counsel is granted, and the judgment of conviction is affirmed.


¶ 36    Motion granted; judgment affirmed.